UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John E. Taylor, Jr. (#R-66376), | |
| Plaintiff, | Case No. 17 C 6094 |
| v. | |
| D. Quarles, et al., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John E. Taylor, Jr., an inmate at Stateville Correctional Center, sues under 42 U.S.C. § 1983 alleging that: (1) Defendant Randy Pfister violated his Fourteenth Amendment due process rights by mishandling his grievance and by implementing various disciplinary measures against him (Count I); and (2) Defendant Don Quarles violated his First Amendment rights by retaliating against Plaintiff after he filed grievances (Count II). Defendants move to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6). [69]. For the reasons explained below, this Court grants Defendants' motion as to Count I and denies Defendants' motion as to Count II.

1

I.  Background[1]

Plaintiff is an inmate at Stateville. [65] at ¶ 3. Defendant Quarles is a correctional officer at Stateville and Defendant Pfister serves as the Chief Administrative Officer of Stateville. *Id.* at ¶¶ 4–5.

In May 2016, Quarles and Officer Ross (another Stateville officer) escorted Plaintiff to a University of Illinois Hospital & Health and Sciences System hospital in Chicago, Illinois for a medical appointment. *Id.* at ¶ 6. After the appointment, Quarles and Officer Ross placed Plaintiff in a holding room at the hospital for several hours. *Id.* at ¶ 8. While using the restroom, Plaintiff's right leg gave out, causing him to fall to the floor and injure his left hand and left side. *Id.* at ¶ 9.

Quarles did not complete an incident report after Plaintiff's fall and did not inform personnel at Stateville's Healthcare Unit about the incident upon his return to the prison. *Id.* at ¶¶ 14–15. Plaintiff claims that Quarles failed to fill out a report so that he would not have to explain why he remained at the hospital two and a half hours after the appointment ended. *Id.* at ¶ 15. According to Plaintiff, such prolonged trips were common among correctional officers, noting that in his seven years of traveling to the hospital for appointments, the officers commonly "kill[ed] time" in the holding room to collect overtime or to avoid receiving new assignments if they returned to Stateville before the end of their shifts. *Id.* at ¶ 16. Plaintiff claims that, as a result of Quarles' failure to complete an incident report, the Healthcare Unit refused to treat Plaintiff for his injuries. *Id.* at ¶ 17.

---

[1] This Court takes the following facts from Plaintiff's Second Amended Complaint [65].

Plaintiff spoke with various Stateville officers about the fall (including Pfister), wrote to several directors of the Illinois Department of Corrections about the incident, and filed an emergency grievance with Pfister. *Id.* at ¶¶ 18–19, 20–22. After speaking with Pfister twice about the incident, Pfister promised Plaintiff that he would investigate the matter. *Id.* at ¶ 22.

Officer Williams of Internal Affairs later interviewed Plaintiff regarding the fall and asked Plaintiff to confirm he wrote certain communications to prison officials about the incident. *Id.* at ¶¶ 25–26. Officer Williams allegedly told Plaintiff: "I believe you. I went on a writ and the Officers wanted to hang out in the holding room." *Id.* at ¶ 25. But following the interview, Stateville personnel cited Plaintiff for: (1) "Impeding or Interfering with an Investigation"; and (2) "Giving False Information to an Employee."[2] *Id.* at ¶ 27. The offenses related to Plaintiff's filing of the grievances, not to "information given and/or actions taken by the Plaintiff during the investigation into the grievance(s)." *Id.* at ¶ 28.

Before the hearing on the offenses, the Adjustment Committee at Stateville tried and failed to locate an eyewitness using a name provided by the Plaintiff. *Id.* at ¶ 29. Plaintiff asserts that the Adjustment Committee failed to inform Plaintiff of its inability to locate the witness during Plaintiff's hearing and sought no clarification from Plaintiff. *Id.* at ¶ 33. The Adjustment Committee found Plaintiff guilty of the offenses and imposed the following disciplinary actions: "(1) One Months C Grade"; (2) "One Months Segregation"; and (3) "One Months Commissary Restriction." *Id.* at

---

[2] Detail on this citation and the subsequent disciplinary proceedings is limited to that provided by Plaintiff in his Second Amended Complaint. [65].

3

¶¶ 31, 33. Pfister signed the Adjustment Committee's final report regarding the offenses and disciplinary measures. *Id.* at ¶ 37.

After learning of the Adjustment Committee's inability to find the eyewitness identified by Plaintiff, Plaintiff found the correct name of the individual and subsequently filed a grievance regarding the hearing and disciplinary measures. *Id.* at ¶ 40. Pfister denied this grievance and others seeking to expunge the disciplinary measures and offenses from Plaintiff's record. *Id.* at ¶¶ 39, 41. Plaintiff alleges that, as a result of his placement in administrative segregation, he could not secure employment for at least two years and faces more difficulty in obtaining parole. *Id.* at ¶¶ 38, 42.

Plaintiff further claims that, while in administrative segregation, Quarles told him "We got your ass for snitching on us." *Id.* at ¶ 44. Immediately afterward, another officer told Plaintiff to "stop writing grievances and letters on officers because you can't win." *Id.* Moreover, after returning to Stateville from another medical appointment, two correctional officers told Plaintiff that Quarles had thrown out the meal Plaintiff had missed during his appointment. *Id.* at ¶ 45. The officers warned Plaintiff not to say anything about the incident and that Quarles was "at war" with Plaintiff. *Id.*

On another occasion, Quarles refused to transport Plaintiff to the hospital in a van equipped for handicapped passengers despite instructions to do so in Plaintiff's paperwork. *Id.* at ¶ 46. Quarles allegedly told other officers he was "not going to do shit for [Plaintiff]" and that he hoped Plaintiff would fall. *Id.* During a later visit to

the hospital, Quarles denied Plaintiff permission to use the restroom, stating that he hoped Plaintiff would "piss" on himself. *Id.* at ¶ 47.

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so that the Defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Iqbal*, 556 U.S. at 678.

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* But a plaintiff may "unwittingly plead himself out of court by alleging facts that preclude recovery." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007). This Court does not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

**III. Analysis**

Defendants move to dismiss Plaintiffs' claims in their entirety. [69]. In his Second Amended Complaint, Plaintiff alleges a Fourteenth Amendment due process violation (Count I) and retaliation in violation of Plaintiff's First Amendment rights (Count II). The Court addresses each count in order below.

**A.  Count I: Procedural Due Process Claim**

In a § 1983 action alleging a procedural due process violation, a plaintiff "must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property," without due process of law. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). As such, where the alleged deprivation at the heart of a § 1983 procedural due process claim does not implicate a protected life, liberty, or property interest, that claim must be dismissed pursuant to Rule 12(b)(6). *See, e.g.*, *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) (affirming district court's dismissal of a procedural due process violation where the alleged harm did not deprive the plaintiff of life, liberty, or property).

In Count I, Plaintiff alleges that Defendant Pfister violated his due process rights by "refusing to investigate the Grievance fully, including searching for potential witness(es) in connection with the Grievance, citing Plaintiff with Offenses and finding Plaintiff guilty of such Offenses that he was not guilty of, placing Plaintiff in segregation and demoting his status in connection with filing a Grievance, and depriving Plaintiff of any future possibility of parole." [65] at ¶ 50. These allegations

6

distill to two possible due process violations: (1) the failure to fully investigate Plaintiff's emergency grievance; and (2) the wrongful imposition of disciplinary measures. But as explained below, neither the alleged mishandling of the emergency grievance nor the disciplinary measures deprived Plaintiff of constitutionally protected interests.

### 1. The Emergency Grievance

The Seventh Circuit has held that state-created prison grievance procedures constitute mere procedural rights that do "not confer any substantive right upon an inmate." *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). In other words, these procedures do not "in and of themselves create cognizable liberty or property interests." *Id.*; *see also Brewer v. Ray*, 181 F. App'x 563, 565–66 (7th Cir. 2006) (holding that the alleged mishandling of a prisoner's institutional grievances did not infringe the prisoner's Fourteenth Amendment rights because the grievances did not constitute protected liberty or property interests). Moreover, a prison's mishandling of a grievance "might affect whether a prisoner needs to exhaust intra-prison remedies before filing a § 1983 suit but is not an independent violation of the Constitution." *Mutawakkil v. Huibregtse*, 527 F. App'x 567, 568 (7th Cir. 2013).

Here, Plaintiff alleges that he filed an emergency grievance regarding his fall and that Defendant Pfister failed to fully investigate the grievance despite promises to do so. [65] at ¶¶ 21–22, 50. But while Plaintiff alleges this mishandling of the grievance ultimately led to disciplinary proceedings and the deprivations of liberty addressed in the following section, *Massey* forecloses the conclusion that Plaintiff

7

possessed a protected liberty or property interest in the emergency grievance itself. As such, Plaintiff fails to allege that Pfister's mishandling of his grievance violated his due process rights.

### 2. The Disciplinary Measures

The Supreme Court has long recognized that lawful "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). Thus, such withdrawals or limitations will only infringe upon protected liberty interests if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In this context, prisoners possess "no liberty interest in remaining in the general population," *Lekas v. Briley*, 405 F.3d 602 (7th Cir. 2005), although administrative segregation of a prisoner *may* violate due process if the "length of segregated confinement is substantial" and the "conditions of confinement are unusually harsh," *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). Conversely, when the administrative segregation is short-lived and not unduly harsh, the plaintiff fails to plead a due process violation. *See, e.g.*, *Hoskins v. Lenar*, 395 F.3d 372, 374–75 (7th Cir. 2005) (affirming dismissal where the plaintiff pled punishment of "a demotion to C-grade . . . , two months in segregation, and a recommendation for a transfer").

Further, other punishments, such as a "demotion to grade-C status," *Smith v. Birkey*, 447 F. App'x 744, 746 (7th Cir. 2011), "loss of commissary privileges,"

8

*Green v. Walker*, 398 F. App'x 166, 168 (7th Cir. 2010), and "loss of prison employment," *id.*, do not deprive a prisoner of constitutionally protected interests. Nor do disciplinary measures limiting an Illinois prisoner's chance of parole, as Illinois' parole statute provides that "parole is not a right," but rather "a matter of grace and executive clemency." *Hill v. Walker*, 948 N.E.2d 601, 605 (Ill. 2011); *see also* ILL. ADMIN. CODE tit. 20, § 1610.50 (2020) (noting the discretionary nature of parole release decisions); *Hyche v. Chandler*, 299 F. App'x 583, 584 (7th Cir. 2008) (because parole remains discretionary, an Illinois prisoner's "hope" of parole "does not create a protected 'liberty' or 'property' interest under the Fourteenth Amendment").

Here Plaintiff alleges that Pfister authorized the following sanctions at the conclusion of disciplinary proceedings against Plaintiff: (1) "One Months C Grade"; (2) "One Months Segregation"; and (3) "One Months Commissary Restriction." [65] at ¶ 33. Plaintiff makes no allegations about the conditions of confinement during the administrative segregation, instead pleading only that the disciplinary sanctions barred him from prison employment for two years and made it "more difficult to be given parole." *Id.* at ¶¶ 38, 42.

As set forth above, given the relative short-lived duration of his segregation, and absent facts showing the segregation was "unusually harsh," Plaintiff's one-month period of administrative segregation by itself fails to qualify as a deprivation of a constitutionally protected liberty interest. Nor do the grade demotion, restriction of commissary privileges, and ineligibility for prison employment demonstrate a deprivation of a liberty interest. Additionally, Plaintiff alleges that he is now less

9

likely to be released on parole as a result of these disciplinary measures, but his mere expectation of parole does not constitute constitutionally protected liberty interest. In short, Plaintiff fails to plead a cognizable deprivation of liberty or property necessary to establish a Fourteenth Amendment violation. This Court thus dismisses Count I of the Second Amended Complaint.

### B. Count II: First Amendment Retaliation Claims

To adequately plead a First Amendment retaliation claim, a plaintiff must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). At this stage in the proceedings, Plaintiff's allegations suffice under this standard.

#### 1. Protected Speech

Incarceration may require the "withdrawal or limitation" of certain privileges and rights, but a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). These objectives include "crime deterrence, prisoner rehabilitation, and internal prisoner security." *Bridges*, 557 F.3d at 548. The Seventh Circuit uses this framework to separate protected from unprotected prisoner speech. At the pleading stage, a prisoner sufficiently alleges he has engaged in protected speech if the speech is "not

10

inconsistent with legitimate penological interests." *Id.* at 551. Truthful speech that furthers prisons' interest in keeping inmates as "safe and secure as possible while imprisoned" can be "quite consistent" with these legitimate penological interests. *Id.*

In this case, Plaintiff discussed his fall and Quarles' refusal to prepare an incident report during oral conversations with Stateville officers, in letters to numerous Illinois Department of Corrections officials, in an emergency grievance filed with Pfister, during interviews conducted by an internal affairs officer at Stateville, and in other grievances Plaintiff filed against Quarles and Officer Ross. [65] at ¶¶ 18–19, 20, 25–26, 48. Reading these allegations in the light most favorable to Plaintiff, Plaintiff's communications furthered Stateville's interest in keeping its inmates safe and secure. This conclusion is further bolstered by Plaintiff's allegations that he was injured while being held at the hospital so that Quarles and Officer Ross could receive overtime or avoid additional work assignments. *Id.* at ¶ 16. Additionally, Plaintiff alleges that the healthcare unit denied medical treatment because of Quarles' refusal to write an incident report. *Id.* at ¶¶ 15, 17. Stateville undoubtedly maintains an interest in ensuring that its inmates do not remain outside its walls for longer than necessary, that inmates report their injuries promptly, and that they receive appropriate medical care for those injuries. Plaintiff's speech plausibly furthers those interests and is not inconsistent with other legitimate penological objectives. *Bridges*, 557 F.3d at 551.

Defendants argue that Plaintiff's speech was not constitutionally protected because it was "a lie." [70] at 10; [75] at 5–6 (citing *Hale v. Scott*, 371 F.3d 917 (7th

11

Cir. 2004)). But when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. Whether Plaintiff spoke truthfully remains a question for discovery and, if necessary, a motion for summary judgment or a trial.

### 2. Deprivation Likely to Deter First Amendment Activity

Plaintiff also plausibly pleads a deprivation likely to deter First Amendment activity. A deprivation is likely to deter a plaintiff from future First Amendment activity when "the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011)). This test is objective; even if a plaintiff continues to engage in protected First Amendment activity after an alleged deprivation, that deprivation may still be likely to deter a person of ordinary firmness. *See, e.g.*, *Dobey v. Jeffreys*, 417 F. Supp. 3d 1103, 1110 (N.D. Ill. 2019) (finding that prisoner plaintiffs had adequately pled First Amendment retaliation despite having "file[d] grievances" and "advocate[d] for parole by writing to the governor" after the alleged deprivations). The deprivations do not need to be "actionable in and of themselves" if they were "in retaliation for the exercise of a constitutionally protected right." *Bridges*, 557 F.3d at 552.

Plaintiff alleges that Quarles retaliated against him by throwing away his food, refusing to transport Plaintiff to the hospital in a van suitable for handicapped passengers, and refusing to allow Plaintiff to use the restroom while he waited in the

hospital holding area after another medical appointment. [65] at ¶¶ 45–47. These allegations plausibly demonstrate that a person of ordinary firmness would be deterred from exercising his rights under the First Amendment. Defendants counter that Plaintiff was not deterred because he filed grievances *after* the alleged retaliation by Defendant Quarles. [70] at 10; [75] at 6. But this Court inquires not whether *Plaintiff* was deterred, but rather whether a *person of ordinary firmness* would be deterred. *Dobey*, 417 F. Supp. 3d at 1110. And Plaintiff sufficiently pleads this element.

### 3. First Amendment Activity a Motivating Factor

To establish that his First Amendment activity constituted a motivating factor in the defendant's decision to take retaliatory action, a plaintiff must allege "a causal link between the protected act and the alleged retaliation." *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 669 (7th Cir. 2005). The simple allegation that a defendant would not have retaliated against plaintiff "but for his participation" in protected First Amendment suffices at the motion to dismiss stage. *See Bridges*, 557 F.3d at 553.

Here Plaintiff's allegations clear that hurdle. Plaintiff alleges that after being placed in administrative segregation Defendant Quarles told him: "We got your ass for snitching on us." [65] at ¶ 44. Plaintiff alleges that immediately afterwards he was told by another officer to "stop writing grievances and letters on officers because you can't win." *Id.* Further, Plaintiff claims that after returning to Stateville from a medical appointment, he learned that Quarles had thrown out the meal Plaintiff

13

missed during his appointment and that Quarles was "at war" with Plaintiff." *Id.* at ¶ 45. In totality, Plaintiff's allegations support an inference that Plaintiff's speech was a motivating factor behind Quarles' decision to retaliate.

## IV. Conclusion

For the reasons explained above, this Court grants in part and denies in part Defendants' Motion to Dismiss [69]. The Motion to Dismiss is granted as to Count I of the Second Amended Complaint [65], and the Motion to Dismiss is denied as to Count II.

Dated: September 24, 2020

                                                                                     Entered:

                                                                                     John Robert Blakey
                                                                                     United States District Judge